**Edward GOODLOE, a minor, by his mother and guardian, Flonzie Gettis, et al., etc., Plaintiffs-Appellants,**

**v.**

**Russell C. DAVIS et al., Defendants,**

**D. L. Rutland and the Servian Club of Jackson, Inc., Defendants-Appellees.**

**No. 75–1204**
**Summary Calendar.\***

United States Court of Appeals,
Fifth Circuit.

June 20, 1975.

---

\* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir. 1970, 431 F.2d 409, Part I.

Herman Wilson, Lawyers' Comm. for Civil Rights Under Law, Jackson, Miss., for plaintiffs-appellants.

Erwin C. Ward, Jackson, Miss., for defendants-appellees.

John E. Stone, City Atty., Jackson, Miss., for Russell C. Davis, and others.

Before COLEMAN, AINSWORTH and SIMPSON, Circuit Judges.

SIMPSON, Circuit Judge:

The plaintiffs below appeal from the district court's order granting a motion for summary judgment on behalf of two defendants, the Servian Club of Jackson, Inc., and its president, D. L. Rutland, appellees here, in this civil rights litigation. We reverse and remand for further proceedings.

Plaintiffs, two minor black children and their parents, filed this class action suit for declaratory, injunctive and other relief against the mayor, two commissioners, the Director of Parks and Recreation, and the City Attorney of Jackson, Mississippi, and the two appellees, for deprivation under color of state law, ordinance, regulation, custom and usage of rights, privileges, and immunities guaranteed by the Constitution and the laws of the United States, more specifically, the Fifth and Fourteenth Amendments and Title 42, U.S.C. §§ 1981, 1983, 1985, 1988 and 2000a. Jurisdiction was invoked pursuant to Title 28, U.S.C. §§ 1343(3), 1343(4) and 2201. The basis of the complaint was the alleged refusal, solely because of race, to allow minor plaintiffs and the other black youth of Jackson to try out for and participate in the summer youth baseball program conducted on city-owned property. The Servian Club is an organization which allegedly sponsors and organizes three leagues which use city recreational facilities on a segregated basis pursuant to an alleged written or oral agreement with the city.

By answers to the complaint and to interrogatories propounded by plaintiffs, the Servian Club and its president denied the existence of any written agreement with the city, acknowledged the existence of an oral agreement entered into in 1957 regarding and regulating the use of city recreational facilities for the baseball program (while disclaiming any knowledge of its details), and claimed present use of city property on a year to year basis. The Servian Club denied any role in the operation and direct sponsorship of the leagues, insisting that its activities were limited to securing sponsors and funds, purchasing equipment, and "coordinating", otherwise undefined. Disclaiming any involvement in the day to day operation of the leagues or in the selection of players, it presented the following as the method of operation of the leagues: league presidents are chosen by interested parents and residents of the locality; the league presidents choose managers of participating teams in each league; and the managers in turn choose coaches; the league presidents independently control the operation of each league. It was admitted that the summer baseball program is operated primarily on city property and is financed in part by city funds.

After filing answers to the complaint and following the filing of answers to interrogatories propounded by plaintiffs, all defendants unsuccessfully moved for dismissal on the ground of mootness. In addition, appellees, Servian Club and its president, moved for summary judgment on the ground that the district court could not properly grant relief against them, contending that any relief as to

them would be beyond the jurisdiction of the court based on the fact that they did not control city-owned real estate or uses thereof, so that they would be powerless to enforce any order entered against them. It was further urged that since the Servian Club's conduct of operations on city property was on a year to year basis only, the city was free to terminate their activities for noncompliance with city policy. Finally, the Servian Club relied on its asserted lack of operating control over the leagues or participation in the selection of team players and officials.

The district court apparently accepted the theory that responsibility for any discriminatory policies rested exclusively with city officials.[1] Private parties, such as the Servian Club, would have to comply with any and all conditions imposed by the city on use of public recreational facilities or forfeit their right to continued use. The court evidently believed that this forced compliance would relieve the club of any responsibility to those whose constitutional rights might have been violated. Under this view of the law, no genuine issues of material facts requiring resolution remained as to the Servian Club and its president and the grant of partial summary judgment under Rule 54(b), F.R.Civ.P., in their favor followed as of course. The city officials were retained as defendants.

■ This was an erroneous view of the governing law and requires reversal. Private parties may not so easily evade responsibility and escape the reach of federal constitutional guaranties in the circumstances alleged in the complaint.

Any action of the Servian Club in enforcing a discriminatory policy pursuant to city directive or policy is taken "under color of law" and is clearly within the power of the courts to enjoin. See Adickes v. S. H. Kress & Co., 1970, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142; Burton v. Wilmington Parking Authority, 1961, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45; Smith v. Young Men's Christian Association of Montgomery, Inc., 5 Cir. 1972, 462 F.2d 634.

This holding means that genuine issues of material facts, Rule 56(c), F.R.Civ.P., remained for trial, precluding the entry of summary judgment.

■ Denial to the named minor plaintiffs and other black youth of Jackson of the exercise of their constitutional rights by refusal to permit them the opportunity to try out for or to participate in the baseball program is yet to be established or disproved. If such denial is proved, the role of the Servian Club and its president in it must be explored. More than their mere unexplained flat denials is required under F.R.Civ.P. 56(c) to demonstrate their lack of operating control or influence over team selection and league policy, in the light of their admissions of financial support and of a coordinating role, and further that in 1974 three of sixteen Little League presidents, two of three Boys League presidents, and two of three Senior League presidents were members of the Servian Club. Additionally, the nature and details of the oral operating agreement between the city and the Servian Club were not disclosed by the pleadings or other papers on file. These matters must be revealed and studied.

1. The district court opinion, in pertinent part, states:

The record shows and the Court knows that the movants are not officials of the city of Jackson, and that they have nothing whatever to do with any policy, or practice of the city of Jackson with respect to public property, and that any existing lease of such property would be and is subject to all of the restrictive rights, powers and duties of the city of Jackson and its officials in charge of such property.

The Servian Club of Jackson, Inc. and the president (D. L. Rutland) of this private club

under such circumstances have no duty, or power, or authority with respect to the public or private rights of the plaintiffs and their wards and have no responsibility to them in respect of such asserted rights. Any adjudication of any rights asserted by these plaintiffs in this complaint would be merely an exercise in futility. It may not be said with absolute assurance that their case here is moot, but it lacks equity and seeks relief beyond the jurisdiction of this Court.

Opportunity to develop the facts in light of applicable law by further proceedings, probably by full scale trial, is necessary to final and conclusive determination of these issues.

Reversed and remanded for further proceedings.